881 F.2d 242
 56 Ed. Law Rep. 36
 Daniel HEIMBERGER, Matthew Heimberger, Harley Anderson, by
and through their mothers individually and on
behalf of all other persons similarly
situated, Plaintiffs-Appellees,
v.
The SCHOOL DISTRICT OF the CITY OF SAGINAW, Defendant-Appellant,
Gary D. Hawks, individually and in his capacity as Interim
Superintendent of the State Board of Education, Defendant.
 Nos. 88-1223, 88-1421.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 24, 1989.
Decided July 27, 1989.
 
 Terri L. Stangl (argued), Dolores Hahn, Legal Services of Eastern Michigan, Saginaw, Mich., for plaintiffs-appellees.
 Thomas H. Schwarze, Robert A. Lusk (argued), Keller, Thomas, Schwarze, Schwarze, DuBay & Katz, Detroit, Mich., for defendant-appellant.
 Before KRUPANSKY and WELLFORD, Circuit Judges, and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 Plaintiff students bring this class action under 42 U.S.C. Sec. 1983 challenging disciplinary policies implemented in the School District of the City of Saginaw (Saginaw).[1] In particular, plaintiffs assert that Saginaw's disciplinary policies deprived or threatened to deprive them of subsidized school lunches in violation of the National School Lunch Act (NSLA), 42 U.S.C. Secs. 1751-1769b, and the Child Nutrition Act (CNA), 42 U.S.C. Secs. 1771-1789. The district court, relying in part on agency interpretation of these acts, held that the two disciplinary policies in dispute violated the NSLA and CNA. The court then granted classwide declaratory relief to the plaintiffs. Because we believe that the named plaintiffs lack standing to bring this action, we reverse and dismiss on jurisdictional grounds.
 
 
 2
 * The named plaintiffs in this case are a current and two former students of Fuerbringer Elementary School, a school in the defendant Saginaw school district. During the 1986-87 school year, Saginaw developed a disciplinary policy under which students could be subject to suspension during the lunch/recess period for misconduct. Under the initial policy ("Policy # 1"), a student who engaged in an act of serious misbehavior during the lunch/recess period was warned that further misbehavior would result in temporary suspension from the lunch/recess period. A student who engaged in two or more acts of serious misbehavior would be temporarily suspended from the lunch/recess period. As a result of the temporary suspension, students were prevented from obtaining their federally-funded lunches and milk. Policy # 1 offered no opportunity for suspended students to obtain their government-subsidized food under any and all circumstances. This disciplinary lunch suspension policy, though not mandatory, was implemented at Fuerbringer Elementary School and resulted in depriving various students of their lunches.[2]
 
 
 3
 Plaintiffs' parents complained to school authorities about the legality of Policy # 1. On May 22, 1987, in response to these complaints, Fuerbringer abandoned Policy # 1 and implemented a revised disciplinary policy ("Policy # 2"). Under Policy # 2, students who engaged in a first act of serious misbehavior during the lunch/recess period were issued a written warning to take home to their parents. In the event of a second act of serious misbehavior, the students' parents were requested to attend a conference with the school principal to discuss the disciplinary problem. If three or more acts of serious misbehavior occurred, the students would be temporarily suspended from the lunch/recess period for a day or more. Significantly, Policy # 2, unlike Policy # 1, did allow suspended students an opportunity to eat their school lunch. Under Policy # 2, in lieu of sending the suspended student home during the lunch/recess period, a student's parent could come to school and supervise the student during the lunch/recess period and thus the student could eat lunch at school. Alternatively, such students could furnish the school with a parental statement of "hardship" that precluded a parent from attending the lunch period for supervisory purposes. If the stated basis for "hardship" was determined by the school to be sufficient cause to justify parental absence, students subject to discipline who obtained such a parental waiver setting forth "good cause" could eat their subsidized lunches and drink their funded milk in a segregated area of the school. If "good cause" was not shown or if the parent simply failed to appear at lunchtime, the student was sent home and did not have a subsidized lunch.
 
 
 4
 This class action was filed on June 2, 1987, soon after the implementation of Policy # 2. In response to both the lawsuit and a threatened loss of funding for its free and reduced-price school lunch program by the Michigan Department of Education, Saginaw temporarily replaced Policy # 2 and implemented a disciplinary scheme under which students are subject to full-day suspensions for the misbehavior that would have warranted a penalty under Policy # 2 ("Policy # 3"). As a result, no students were disciplined under Policy # 2. Saginaw, however, indicated its intention to reinstate Policy # 2 pending a successful outcome in this litigation. The plaintiffs concede, and the district court agreed, that Policy # 3 does not violate the NSLA or CNA.
 
 
 5
 Both parties filed motions for summary judgment. Saginaw raised several jurisdictional issues, arguing among other things that the named plaintiffs lacked standing to bring the lawsuit because the court could not redress their alleged loss of school lunches, because two of the named plaintiffs no longer attended Fuerbringer school, and because there was no reasonable likelihood that the third named plaintiff, Daniel Heimberger, would be punished under Policy # 2 if and when it was reinstituted. Further, assuming the court reached the merits, Saginaw contended that Policy # 2 did not violate the NSLA and CNA.
 
 
 6
 The district court disagreed and granted summary judgment for the plaintiffs. The court determined that Daniel Heimberger had standing, since he remained a student at Fuerbringer. Finding no other jurisdictional bar, the district court proceeded to the merits. It held that Policy # 1 and Policy # 2 violated the NSLA and CNA because the discipline imposed under both policies constituted a "direct" deprivation of a subsidized school lunch as discipline. In reaching this conclusion, the court relied heavily on United States Department of Agriculture (USDA) interpretations of the NSLA and CNA. Specifically, it relied on USDA Federal Nutritional Service Instruction 791-1 (March 17, 1980), which states that "the denial of a meal or milk as a disciplinary action against students determined eligible for free meals or milk or reduced price meals is inconsistent with the law." Joint Appendix, Case No. 88-1223, at 142. Instruction 791-1, on the other hand, states that "disciplinary action which indirectly results in the loss of meals or milk (e.g., a student is suspended from attending school) is not, however, inconsistent with the law." Id. The issue then before the district court was whether or not the temporary suspension for the lunch hour was prohibited "direct" discipline or permissible "indirect" discipline. In addition to FNS Instruction 791-1, the district court had in the record before it a letter dated June 19, 1987, from Russ Circo, Regional Director of the Child Nutrition Programs for the United States Department of Agriculture, to Dr. Philip O'Leary of the Michigan Department of Education, stating Circo's opinion that Policy # 2 violated the NSLA and CNA ("It is our Department's belief that the suspension from school premises for the limited period of the school lunch hour, thus making access to a meal impossible, violates the intent of FNS Instruction 791-1 and Section 9 of the National School Lunch Act." Joint Appendix, Case No. 88-1223, at 138). Furthermore, on June 23, 1987, Gary D. Hawks, Interim Superintendent of Public Instruction for the Michigan Department of Education, wrote a strongly-worded letter to Saginaw superintendent Dr. Foster B. Gibbs, indicating that the Michigan Department of Education considered that Policy # 2 violated federal law ("Food and Nutrition Service Instruction 791-1 ... does not permit the present policy of the Saginaw School District. Any disciplinary action limited to the lunch hour which results in the denial of free or reduced price meals to eligible children is clearly contrary to federal law." Joint Appendix, Case No. 88-1223, at 134). Hawks' letter called for a "comprehensive written corrective action plan" to bring Saginaw's disciplinary policies in compliance with federal law.[3]
 
 
 7
 Considering the evidence before it, the district court held that a temporary suspension during the lunch hour was "direct" discipline and consequently granted the plaintiffs classwide declaratory relief that Policy # 1 and Policy # 2 violated the NSLA and CNA.[4] Moreover, at a separate hearing, the court granted plaintiffs' request for attorney fees under 42 U.S.C. Sec. 1988.
 
 
 8
 Saginaw appeals on several grounds. As an initial matter, Saginaw raises several jurisdictional issues. First, Saginaw questions whether the plaintiffs have standing to bring the lawsuit, emphasizing that the court cannot redress the plaintiffs' alleged injury. Saginaw next asserts that the lawsuit is moot as to plaintiffs Matthew Heimberger and Harley Anderson,[5] and not ripe as to the remaining class representative Daniel Heimberger. As to the merits, Saginaw continues to assert that Policy # 2 does not violate the NSLA and CNA. In addition, Saginaw argues that the district court erred in granting plaintiffs' motion for class certification.[6] Finally, Saginaw appeals separately from the court's determination of attorney fees. On the attorney fees issue, Saginaw argues that the plaintiffs are not a "prevailing party" under 42 U.S.C. Sec. 1988.
 
 II
 
 9
 We first address Saginaw's standing argument. Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." U.S. Const. art. III, Sec. 2. It is not enough for a litigant to prove that a violation of federal law has occurred. Instead, in order to establish a case or controversy, a litigant must have standing to invoke the power of a federal court. Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471-76, 102 S.Ct. 752, 757-61, 70 L.Ed.2d 700 (1982). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or particular issues. This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.... In both dimensions it is founded in concern about the proper--and properly limited--role of the courts in a democratic society." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).
 
 
 10
 As this court recognized in Jaimes v. Toledo Metropolitan Housing Authority, 758 F.2d 1086, 1093 (6th Cir.1985), standing in the constitutional sense consists of a three-part analysis. First, a party must allege and prove a "distinct and palpable injury." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). Second, this injury must be "fairly traceable" to the defendant's allegedly unlawful conduct. Duke Power Co. v. Carolina Envtl. Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2629-30, 57 L.Ed.2d 595 (1978). Finally, there must be a substantial probability that the claimed injuries will be redressed by the requested relief. Allen v. Wright, 468 U.S. 737, 757-59, 104 S.Ct. 3315, 3327-29, 82 L.Ed.2d 556 (1984) (no standing because entirely speculative whether withdrawal of tax-exempt status from alleged racially discriminatory school would lead that school to change its policies; also speculative whether a parent would transfer child from private school to public school after private school lost tax-exempt status); Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 42-46, 96 S.Ct. 1917, 1926-28, 48 L.Ed.2d 450 (1976) (no standing because withdrawing hospitals' tax-exempt status would not force such hospitals to provide adequate care to indigents).
 
 
 11
 On appeal, Saginaw challenges the plaintiffs' standing under the third of the standing requirements--that of redressability. Specifically, Saginaw asserts that the injury alleged--the threatened denial of school lunches--would not be redressed by the declaratory and injunctive relief sought. It argues that the declaratory judgment sought and won in this case actually exacerbates rather than relieves the alleged injury. As it points out, plaintiffs would miss subsidized meals and class time because full-day suspensions (Policy # 3), in which the loss of lunch is incidental, would be and have been imposed in lieu of lunchtime suspensions.
 
 
 12
 The plaintiffs respond to the redressability issue by arguing that Saginaw could elect to comply with the declaratory judgment and federal law by either on-site lunch hour segregation or the more drastic full-day suspension. That Saginaw chose the more drastic measure, they argue, should not affect the standing analysis. Further, plaintiffs assert that their injuries have actually been redressed. As they explain, the declaratory judgment prevents Saginaw from using Policy # 1 and Policy # 2 and as a result prevents deprivations of school lunches while the plaintiffs are in attendance in school. The plaintiffs thus assert that they got the limited relief they wanted.[7]
 
 
 13
 Nonetheless, we agree with Saginaw that the plaintiffs lack standing. As heretofore stated, it is conceded that Saginaw may impose Policy # 3 without violating federal law and is not contended that Saginaw will not continue to impose Policy # 3 if it is prohibited from enforcing Policy # 2. Also, plaintiffs have not contended that Saginaw is required by federal law to have this subsidized lunch program. Given these circumstances, this court cannot redress the errant plaintiffs' complaints that they should be allowed to remain in school and receive their lunches at school. The students in this case will lose their school lunches under Policy # 3 regardless of any declaratory or injunctive relief granted concerning Policy # 2. In addition, these plaintiffs will lose school class time as well under Policy # 3. Because the plaintiffs have not shown a substantial probability that their claimed injuries will be redressed by the declaratory and injunctive relief sought, we believe it would be contrary to the grant of judicial power under article III for this court to exercise its remedial powers.[8]
 
 
 14
 Accordingly, we reverse the decision of the district court granting declaratory relief and attorney fees to plaintiffs and dismiss this action for lack of jurisdiction on the ground that plaintiffs have not shown that their injuries will be redressed by the relief sought. Because we dismiss on jurisdictional grounds, we express no opinion as to whether Policy # 1 and # 2 violate the federal statutes involved here. We would, however, point out that if Policy # 2 is reinstated, as is expected, at Fuerbringer those parents who oppose this policy are free to exercise leverage by seeking relief from the United States Department of Agriculture or the Michigan Department of Education.
 
 WELLFORD, Circuit Judge, concurring:
 
 15
 I concur in Judge Brown's opinion. Clearly, neither Matthew Heimberger nor Harley Anderson nor their parents have standing in this case to seek equitable relief that would apply to a school they no longer attend. Their claims are moot and were at the time of class certification.
 
 
 16
 I would also concur that Daniel Heimberger has no basis to contest the controverted policy of suspension when he concedes that defendants may lawfully and properly suspend students for activities similar to those involved in the questioned disciplinary plan, if applicable to him, for an entire day, not just for a lunch period.
 
 
 17
 I would further hold that in the posture of the case, as presented to us, it is one not "fit" or "ripe" for adjudication. See City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Newsome v. Batavia Local School Dist., 842 F.2d 920 (6th Cir.1988); Allstate Insurance Co. v. Wayne County, 760 F.2d 689, 696 (6th Cir.1985).
 
 
 18
 I would therefore concur in the reversal and dismissal of this case under its unusual circumstances.
 
 
 
 [1]
 The plaintiffs' class as ultimately certified by the district court consisted of "[a]ll students in the School District of Saginaw elementary schools who have been denied or threatened with denial of free or reduced price lunches based on either of the School District of Saginaw's disciplinary lunch period suspension policies that were implemented during the 1986-87 school year and have since been withdrawn." Joint Appendix, Case No. 88-1223, at 222
 
 
 [2]
 Plaintiffs Matthew and Daniel Heimberger were suspended and consequently deprived of subsidized school lunches under Policy # 1. The remaining class representative, Harley Anderson, was never suspended under Policy # 1, but was issued a written warning
 
 
 [3]
 In response to Hawks' letter and a threatened withdrawal of subsidized school lunch funding, Saginaw stayed implementation of Policy # 2 pending the outcome of this litigation. Saginaw evidently hoped that a favorable decision on the merits would change the Michigan Department of Education's view on the matter
 
 
 [4]
 Injunctive relief was unnecessary, the court determined, as Saginaw agreed to withdraw Policy # 2 if the court found it to be illegal
 
 
 [5]
 Matthew Heimberger and Harley Anderson had graduated from and did not attend Fuerbringer Elementary School after the end of the 1986-87 school year. Moreover, the record indicates that their present school does not have the same school lunch disciplinary policy as Fuerbringer Elementary. The district court held that the cause was not moot only as to Daniel Heimberger, and we do not understand plaintiffs to contend that it was not moot as to Matthew Heimberger and Harley Anderson
 
 
 [6]
 Since we reverse the judgment on the ground that the district court did not have jurisdiction, we do not decide whether the class certification was error
 
 
 [7]
 As will be seen, this is a classic Pyrrhic victory. In their zeal to win the battle against Policy # 2, plaintiffs have lost the war
 
 
 [8]
 Because we hold that plaintiffs lack standing on redressability grounds, we do not consider Saginaw's other assertion that the case is not "ripe" as to Daniel Heimberger. The district court held that plaintiff Daniel Heimberger could show a "reasonable likelihood" that he would be deprived of a school lunch under Policy # 2, since Daniel had lost school lunches under Policy # 1 and Saginaw had indicated its intention to reinstate Policy # 2. In assessing the likelihood that state authorities will re-inflict a given injury, the Supreme Court and this circuit have generally been unwilling to assume that a "party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury." Honig v. Doe, 484 U.S. 305, ----, 108 S.Ct. 592, 602, 98 L.Ed.2d 686, 704 (1988). See Los Angeles v. Lyons, 461 U.S. 95, 105-06, 103 S.Ct. 1660, 1666-67, 75 L.Ed.2d 675 (1983); Newsome v. Batavia Local School Dist., 842 F.2d 920, 922-23 (6th Cir.1988). In this case, under Policy # 2, Daniel Heimberger would have to commit at least three acts of serious misbehavior in a school year. In addition, his mother must fail to show "good cause" or to appear at lunchtime before Daniel would lose his school lunch. While we do not decide this issue, we have serious questions as to the district court's conclusion, under Honig, that the plaintiffs have shown a "reasonable likelihood" of re-injury